UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAUDIA VERONICA CARRANZA,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 2:23-cv-0816-CSK<br><br>ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 15, 17) |

Plaintiff Claudia Veronica Carranza seeks judicial review of a final decision by Defendant Commissioner of Social Security denying an application for disability insurance benefits and supplemental security income.[1] In the summary judgment motion, Plaintiff contends the Administrative Law Judge ("ALJ") erred. Plaintiff seeks a remand for further proceedings. The Commissioner opposes Plaintiff's motion, filed a cross-motion for summary judgment, and seeks affirmance.

For the reasons below, Plaintiff's motion is DENIED, the Commissioner's cross-motion is GRANTED, and the final decision of the ALJ is AFFIRMED.

/ / /

/ / /

---

[1] This action was referred to the magistrate judge under Local Rule 302(c)(15) and is proceeding on the consent of all parties. (ECF Nos. 5, 10, 11.)

1

## I. SOCIAL SECURITY CASES:  FRAMEWORK & FIVE-STEP ANALYSIS

The Social Security Act provides benefits for qualifying individuals unable to "engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(a). When an individual (the "claimant") seeks Social Security disability benefits, the process for administratively reviewing the request can consist of several stages, including: (1) an initial determination by the Social Security Administration; (2) reconsideration; (3) a hearing before an ALJ; and (4) review of the ALJ's determination by the Social Security Appeals Council. 20 C.F.R. §§ 404.900(a), 416.1400(a).

At the hearing stage, the ALJ is to hear testimony from the claimant and other witnesses, accept into evidence relevant documents, and issue a written decision based on a preponderance of the evidence in the record. 20 C.F.R. §§ 404.929, 416.1429. In evaluating a claimant's eligibility, the ALJ is to apply the following five-step analysis:

> **Step One**: Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to step two.
>
> **Step Two**: Does the claimant have a "severe" impairment? If no, the claimant is not disabled. If yes, proceed to step three.
>
> **Step Three**: Does the claimant's combination of impairments meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listings")? If yes, the claimant is disabled. If no, proceed to step four.
>
> **Step Four**: Is the claimant capable of performing past relevant work? If yes, the claimant is not disabled. If no, proceed to step five.
>
> **Step Five**: Does the claimant have the residual functional capacity to perform any other work? If yes, the claimant is not disabled. If no, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020). If the ALJ finds a claimant not disabled, and the Social Security Appeals Council declines review, the ALJ's decision becomes the final decision of the Commissioner. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012) (noting the Appeals Council's denial of review is a non-final agency action). At that point, the

claimant may seek judicial review of the Commissioner's final decision by a federal district court. 42 U.S.C. § 405(g).

The district court may enter a judgment affirming, modifying, or reversing the final decision of the Commissioner. *Id.* ("Sentence Four" of § 405(g)). In seeking judicial review, the plaintiff is responsible for raising points of error, and the Ninth Circuit has repeatedly admonished that the court cannot manufacture arguments for the plaintiff. *See Mata v. Colvin*, 2014 WL 5472784, at *4 (E.D. Cal, Oct. 28, 2014) (citing *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003)).

A district court may reverse the Commissioner's denial of benefits only if the ALJ's decision contains legal error or is unsupported by substantial evidence. *Ford*, 950 F.3d. at 1154. Substantial evidence is "more than a mere scintilla" but "less than a preponderance," i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). The court reviews evidence in the record that both supports and detracts from the ALJ's conclusion, but may not affirm on a ground upon which the ALJ did not rely. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). The ALJ is responsible for resolving issues of credibility, conflicts in testimony, and ambiguities in the record. *Ford*, 950 F.3d at 1154. The ALJ's decision must be upheld where the evidence is susceptible to more than one rational interpretation, or where any error is harmless. *Id.*

II.     **FACTUAL BACKGROUND AND ALJ'S FIVE-STEP ANALYSIS**

On November 16, 2016, Plaintiff applied for disability insurance benefits under Title II of the Social Security Act, alleging she had been disabled since October 1, 2015. Administrative Transcript ("AT") 167 (available at ECF No. 12). Plaintiff claimed disability due to left arm and leg problems, headaches, neck pain, and lower back pain. *See* AT 64. Plaintiff's application was denied initially and upon reconsideration; she sought review before an ALJ. AT 75, 88, 105. Plaintiff appeared with a representative at a May 29, 2018 hearing before an ALJ, where Plaintiff testified about her impairments and where a vocational expert testified about hypothetical available jobs. AT 40-63. On

September 6, 2018, the ALJ issued a decision finding Plaintiff was not disabled. AT 24-39. Plaintiff sought review in the district court on July 23, 2019. AT 1622. On March 11, 2020, Plaintiff and the Commissioner stipulated to remanding the case for further proceedings. *See* AT 1639 (docket for *Carranza v Commissioner of Social Security*, No. 2:19-cv-1354-CKD (E.D. Cal.)).

On October 15, 2020, the Social Security Appeals Council remanded the case to an ALJ for further proceedings. AT 1648-50. The Appeals Council noted that on January 2, 2020, Plaintiff filed a subsequent claim for benefits under Titles II and XVI of the Social Security Act, and so these claims were consolidated with her claim filed November 16, 2016. AT 1649. The Appeals Council instructed the ALJ to "give further consideration to the claimant's maximum residual functional capacity with specific references to evidence of record in support of addressed limitations," as well as to clarify Plaintiff's ability to work under the "expanded record." AT 1649. On February 23, 2021, Plaintiff appeared with a representative at a hearing before an ALJ, where Plaintiff testified about her impairments and where a vocational expert testified about hypothetical available jobs. AT 1565-94.

On March 22, 2021, the ALJ issued a second decision finding Plaintiff was not disabled. AT 1543-64. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 1, 2015. AT 1546. At step two, the ALJ determined Plaintiff had the following severe impairments: left shoulder adhesive capsulitis, degenerative changes and history of left humerus fracture status post open reduction internal fixation, lumbar degenerative disc disease, cervical degenerative disc disease, and history of right tibia fracture status post open reduction internal fixation. *Id.* At step three, the ALJ found Plaintiff's combination of impairments did not meet or medically equal any Listing. AT 1549.

The ALJ then found Plaintiff had the residual functional capacity to perform light work (20 C.F.R. §§ 404.1567(b) and 416.967(b)), except that Plaintiff could only:

///

> [L]ift 20 pounds occasionally and ten pounds frequently;
> stand, walk or sit for six hours each with normal breaks;
> occasionally climb ladders, ropes, or scaffolds; occasionally
> stoop, kneel, crouch or crawl;  and have no prolonged
> exposure to heights or dangerous moving machinery.

AT 1549. In formulating this residual functional capacity, the ALJ stated she considered Plaintiff's symptom testimony, the objective medical evidence and other evidence, and the medical opinions. *Id.* This included a disability report and questionnaire from Plaintiff completed in December 2016, and Plaintiff's testimony at the May 2018 and February 2021 hearings. AT 1550 (citing AT 44-56, 184-92, 195-201, 1570-86). This also included, as is relevant here, the medical evidence in the record from June 2016 through September 2020 concerning Plaintiff's shoulder impairment, AT 1551-54, and medical opinions from the treating, examining, and reviewing physicians. AT 1555-56.

Evaluating the medical opinions regarding Plaintiff's shoulder impairment, the ALJ gave great weight to the opinions of Dr. G. Taylor (reviewing physician at the initial determination stage, AT 70-72), Dr. Michael Spackman (reviewing physician at the reconsideration stage, AT 83-85), and Dr. Satish K. Sharma (physician who examined Plaintiff at an August 17, 2020 consultative exam, AT 2006-09). AT 1555-56. Each of these physicians opined Plaintiff could lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; they did not find Plaintiff was limited in her ability to reach with her left shoulder. *See id.* The ALJ also gave partial weight to the opinion of Dr. Shahid D. Ali, who examined Plaintiff at a February 9, 2017 consultative exam. AT 1555-56 (citing AT 1097-99). Dr. Ali assigned similar physical limitations as Drs. Taylor, Spackman, and Sharma, and the ALJ gave this part of the opinion "great weight." AT 1555. However, the ALJ gave little weight to Dr. Ali's opinion finding unspecified "limitations to reaching on the left." AT 1099. The ALJ also gave little weight to the opinions of Dr. Damon Jon Ng (stated in a May 22, 2017 work status report, AT 1309) and Physician Assistant ("PA") Tobias James (stated in an April 7, 2017 progress note, AT 1296), who both opined that Plaintiff was "precluded from reaching above the shoulder." AT 1556. The ALJ found the reaching limitations opined by Dr. Ali, Dr. Ng, and PA James were inconsistent with the

opinion of Dr. Taylor "as discussed." AT 1556. Finally, the ALJ gave little weight to the opinion of Dr. Charles Thomas Buckerfield (stated in a February 17, 2017 treatment note, AT 1186), who assigned no reaching limitations at all. AT 1556. In doing so, the ALJ noted this opinion was not sufficiently restrictive given the medical evidence. AT 1556.

Based on the residual functional capacity, the ALJ determined at step four that Plaintiff was incapable of performing past relevant work. AT 1556. However, at step five, the ALJ found Plaintiff capable of performing other jobs in the national economy, including: (i) companion, light exertion, with 424,000 jobs nationally; and (ii) playroom attendant, light exertion, with 31,000 jobs nationally.[2] AT 1557. Thus, the ALJ found Plaintiff not disabled during the relevant period. AT 1558.

On March 2, 2023, the Appeals Council rejected Plaintiff's appeal. AT 1535. Plaintiff then filed this action requesting judicial review of the Commissioner's final decision issued March 20, 2021, and the parties filed cross-motions for summary judgment. (ECF Nos. 1, 15, 17.)

## III.    ISSUES PRESENTED FOR REVIEW

Plaintiff contends the ALJ erred by: (1) failing to provide specific and legitimate reasons for discounting the medical opinions regarding Plaintiff's inability to reach with her left upper extremity, and (2) failing to offer clear and convincing reasons for rejecting the more severe aspects of her symptom testimony about her shoulder pain. (ECF No. 15)

The Commissioner argues the ALJ: (1) reasonably evaluated the medical opinions about Plaintiff's capabilities with her left arm; and (2) reasonably evaluated Plaintiff's subjective complaints concerning her left shoulder impairment. (ECF No. 17.) Thus, the Commissioner contends the decision as a whole is free from legal error, supported by substantial evidence, and should be affirmed. (*Id.*)

---

[2] "Light" in the ALJ's step-five determination references light work, as defined by 20 C.F.R. § 404.1567(b).

6

## IV. DISCUSSION

### A. Medical Opinion Evidence

#### 1. Legal Standards

For cases filed before March 27, 2017, the ALJ is required to consider a number of factors in deciding the weight given to any medical opinion. These include the examining relationship, the length of the treatment relationship and frequency of examination, the amount of support detailed in the opinion, the consistency of the opinion with the record, specialization of the medical professional, and any other factors deemed relevant. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). Additionally, in the Ninth Circuit, for cases filed before March 27, 2017, the weight to be afforded a medical opinion depends heavily on whether it was proffered by a treating, examining, or non-examining professional. *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001); *Lester*, 81 F.3d at 830.

Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. *Holohan*, 246 F.3d at 1202. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion that is supported by different independent clinical findings, the ALJ may resolve the conflict between the conflicting opinions and decide which opinion to credit. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

In order to evaluate whether an ALJ properly rejected a medical opinion, the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. *Lester*, 81 F.3d at 831. For an ALJ to properly reject the contradicted opinion of a treating or examining doctor, the ALJ must provide "specific and legitimate" reasons. *Id.* at 830. An ALJ provides specific and legitimate reasons by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [an] interpretation thereof, and making findings." *Magallanes*, 881 F.2d

7

at 751. The ALJ is not required to give an opinion any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. *Lester*, 81 F.3d at 831; *but see Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record.").

2. Analysis

Here, Plaintiff's arguments focus on the ALJ's resolution of the conflict between medical opinions about Plaintiff's ability to reach with her left shoulder. (ECF No. 15 at 18-20.) The ALJ provided most of her analysis on this issue in the paragraph of her decision summarizing Dr. Taylor's opinion. AT 1555 (citing AT 70-72). Dr. Taylor opined Plaintiff could "lift, carry, push, and pull 20 pounds occasionally and ten pounds frequently." AT 70. The ALJ assigned this opinion "great weight" due to Dr. Taylor's cited support in the record, and due to the opinion's consistency with other evidence and other medical opinions. AT 1555. This included recognizing Plaintiff's "changes in her left shoulder impairment with improved strength and left shoulder range of motion," "[a]s discussed." *Id.* Relevant here, Dr. Taylor did not opine Plaintiff had any limitations on her ability to reach. *Id.*

The ALJ also summarized the opinions of Dr. Spackman, who reviewed Plaintiff's application at the reconsideration stage, AT 83-85; Dr. Ali, who examined Plaintiff on February 9, 2017, AT 1097-99; and Dr. Sharma, who examined Plaintiff on August 17, 2020, AT 2006-09. Each of these doctors opined similar lift/carry limitations as Dr. Taylor, and the ALJ assigned "great weight" to these opinions for "the same reasons discussed regarding Dr. Taylor's opinion." AT 1555-56. However, Dr. Ali also opined

8

Plaintiff had "limitations to reaching on the left," and both Dr. Ng and PA James opined Plaintiff was "precluded from reaching above the shoulder." AT 1099 (report from Dr. Ali after his February 9, 2017 consultative exam), AT 1309 (May 22, 2017 work status report from Dr. Ng, who performed Plaintiff's shoulder surgery in June 2016), AT 1296 (April 7, 2017 progress note from PA James, who oversaw Plaintiff's physical therapy). The ALJ rejected the reaching limitations opined by Dr. Ali, Dr. Ng, and PA James "for the same reasons discussed regarding Dr. Taylor's opinion." AT 1555-56.

  First, Plaintiff argues the ALJ's analysis regarding the reaching limitations opined by Dr. Ali, Dr. Ng, and PA James contains error because the ALJ did not actually discuss Plaintiff's ability to reach in the paragraph summarizing Dr. Taylor's opinion. Thus, Plaintiff argues the ALJ's decision does not provide "specific and legitimate" reasons for rejecting a reaching limitation. The Court does not read the ALJ's analysis so narrowly.

  The ALJ specifically found Dr. Taylor's opinion "partially consistent with the evidence of record," and cited Plaintiff's "changes in her left shoulder impairment with improved strength and left shoulder range of motion," "[a]s discussed" in the ALJ's extensive summary of the medical evidence in the preceding three-and-a-half pages. AT 1555, 1551-54. This summary included citations to the record from the time Plaintiff's shoulder impairment first manifested on June 21, 2016, through her improvements in shoulder strength and range of motion with physical therapy and cortisone shots in late 2016 and early 2017, and continued improvements from 2017 to 2020. AT 1551-54 (citing, e.g., AT 433-36 (report upon Plaintiff's discharge after her shoulder surgery), AT 907 (November 2016 report showing improved range of motion in shoulder), AT 1219 (March 2017 physical therapy report showing improved shoulder range of motion and strength), AT 1334 (PA James's release of Plaintiff from scheduled physical therapy and removal of modified work duty condition in August 2017), AT 1905-23 (April to October 2018 normal exams of shoulder)). The ALJ's summary also included citations to Plaintiff's reports to her medical providers that her pain was generally improving during this time and that she could accomplish more tasks at home. *See, e.g.*, AT 1551-54

(citing, e.g., AT 909 (November 2016 report of improved pain and being "off pain medications for the last month"), AT 1105 and 1128 (December 2016 report of "moving [] arm better" and ability to reach for things in the refrigerator), AT 1097 (February 2017 report of "pain everywhere"), AT 1310 (July 2017 report of pain being well controlled after cortisone shot), AT 1337 (August 2017 report of engaging in laundry and light house cleaning)).

In sum, the ALJ provided a detailed and thorough summary of the evidence, found the opinions of Drs. Taylor, Spackman, and Sharma were consistent with this evidence, and found that the reaching limitations opined by Dr. Ali, Dr. Ng, and PA James were inconsistent with the same evidence. This meets the Ninth Circuit's "specific and legitimate reasons" test. *See Magallanes*, 881 F.2d at 751 (stating specific and legitimate reasons are given by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [an] interpretation thereof, and making findings"); *Tonapetyan*, 242 F.3d at 1149 (reminding that a contrary opinion of a non-examining medical expert can be included in the rationale for discounting a treating or examining physician's opinion if "consistent with other independent evidence in the record"); *see also* 20 C.F.R. §§ 404.1527(c)(4); 416.927(c)(4) (noting a medical opinion can be given less weight if less consistent with the record as a whole). Further, the ALJ noted Dr. Ali failed to quantify any limitation, which is a permissible reason to give an opinion less weight. *See Meanel*, 172 F.3d at 1114 (treating physician's conclusory, minimally supported opinion rejected). Any failure by the ALJ to explicitly state that Dr. Taylor did not include a reaching limitation (*see* AT 1555) is harmless at best. *See Treichler*, 775 F.3d at 1099 (reminding that an error is harmless "if the agency's path may reasonably be discerned," even if the agency "explains its decision with less-than-ideal clarity").

Second, Plaintiff argues the ALJ misconstrues the evidence in the record by finding Plaintiff's shoulder impairment was continually improving. Plaintiff notes the ALJ credited the findings of tenderness in Plaintiff's shoulders during Dr. Buckerfield's

February 2017 exam (AT 1186) and Dr. Sharma's August 2020 exam (AT 2008). Plaintiff thus questions how the ALJ can reject a reaching limitation, as opined by Dr. Ali, Dr. Ng, and PA James, when there is evidence to support that her shoulder was not improving. Plaintiff also questions this "continual improvement" conclusion given that Dr. Ali's 2017 exam showed Plaintiff's internal rotation was at 0-80 degrees (AT 1098), but Dr. Sharma's 2020 exam showed her internal rotation only at 30 degrees (AT 2008).

Again, Plaintiff's construction of the ALJ's findings is too narrow. In resolving the conflict in these medical opinions and evidence, the ALJ did not conclude Plaintiff had no shoulder impairment whatsoever. *See* AT 1549 (finding Plaintiff had the "severe impairments" of "left shoulder adhesive capsulitis," and "degenerative changes and history of left humerus fracture status post open reduction internal fixation"). Instead, the ALJ's decision attempts to resolve conflicts in the record regarding the effect of these severe impairments on Plaintiff's ability to work—from those opinions deeming Plaintiff was completely "precluded from reaching above the shoulder" (as opined by Dr. Ng and PA James) to those finding Plaintiff had "no limitations" at all (as opined by Dr. Buckerfield). Resolving conflicts in the record, and crafting a residual functional capacity, are within the ALJ authority to resolve, and the Court is not permitted to reweigh this evidence. *Ford*, 950 F.3d at 1154.

For these reasons, the ALJ's analysis on the opinions surrounding Plaintiff's shoulder impairment meets the "specific and legitimate" test under the Commissioner's pre-March 27, 2017 regulations. *See Magallanes*, 881 F.2d at 751.

**B.     Subjective Symptom Testimony**

1.     Legal Standards

A claimant's statements of subjective symptoms alone are insufficient grounds to establish disability. 20 C.F.R § 404.1529(a). If an ALJ was required to believe every allegation of pain or impairment, disability benefits would run afoul of the Social Security Act and its purpose. *Treichler v. Comm'r*, 775 F.3d 1090, 1106 (9th Cir. 2014). In

11

evaluating the extent to which an ALJ must credit the claimant's report of their symptoms, the Ninth Circuit has stated:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
>
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (quotations omitted). The ALJ's reasons for discounting or rejecting a claimant's subjective symptom testimony must be sufficiently specific to allow a reviewing court to conclude the adjudicator did not arbitrarily discredit a claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 483 (9th Cir. 2015) (quotations omitted). Examples of "specific, clear and convincing reasons" for discounting or rejecting a claimant's subjective symptom testimony include: prescription of conservative treatment, inconsistencies between a claimant's testimony, and conduct (including daily activities), and whether the alleged symptoms are consistent with the medical evidence of record. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *see also Fair v. Bowen*, 885 F.2d 597, 604 n.5 (9th Cir. 1989) (explaining that the ALJ may employ ordinary techniques of credibility evaluation and may take into account prior inconsistent statements).  A lack of corroborating, objective medical evidence alone is insufficient grounds for an ALJ to discount a claimant's subjective symptoms; however, it is a factor the ALJ may consider. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R § 404.1529(c)(2)).

/ / /

2. <u>Analysis</u>

Plaintiff's point of error concerning the ALJ's findings on her symptom testimony also focuses on her pain from reaching with her left shoulder. (ECF No. 15 at 21-23.) In considering Plaintiff's testimony, the ALJ first took note of Plaintiff's statements in a December 2016 disability report and questionnaire and her testimony at the May 2018 and February 2021 hearings. AT 1550 (citing AT 44-56, 184-92, 195-201, 1570-86). This included Plaintiff's statements that her pain was constant, that she could lift no more than five pounds, and that she could only briefly engage in activities such as washing dishes and cooking, requiring frequent rest periods between. *See id.* The ALJ found Plaintiff's symptoms reasonably related to her shoulder impairment, but did not find the "intensity, persistence, and limiting effects of these symptoms . . . entirely consistent with the medical evidence and other evidence in the record." AT 1550.

For support, the ALJ extensively detailed the medical evidence in the record, including how Plaintiff's shoulder impairment manifested on June 21, 2016 and improved over time. AT 1551-54 (citing, e.g., AT 433-36 (report upon Plaintiff's discharge after her shoulder surgery), AT 907 (November 2016 report showing improved range of motion in shoulder), AT 1098-99 (results of Dr. Ali's February 2017 exam showing "normal strength, sensation, and reflexes in Plaintiff's arms"), AT 1219 (March 2017 physical therapy report showing improved shoulder range of motion and strength), AT 1311 (July 2017 report indicating Plaintiff was "able to touch top of head"), AT 1333-34 (August 2017 record from PA James noting improvements, the end of regular physical therapy for Plaintiff, and stating Plaintiff's "block to employment is anxiety related not physical limitations")). The ALJ noted that between April and October 2018, Plaintiff's shoulder exams were normal. AT 1553 (citing AT 1905-23). By the August 2020 exam, Dr. Sharma assigned no reaching limitations, even despite noting some tenderness in Plaintiff's shoulder. AT 2006-09. This evidence supports the ALJ's conclusion that Plaintiff's pain did not preclude work due to an inability to reach, and while the ALJ could not rely solely on the medical evidence to discount her pain testimony, it is a factor the

13

ALJ could consider. *See Rollins*, 261 F.3d at 857 (citing 20 C.F.R § 404.1529(c)(2)).

In addition to the medical evidence, the ALJ noted Plaintiff's improvement following her June 2016 surgery with physical therapy and cortisone shots. AT 1105 (December 2016 report of "moving [] arm better"). The ALJ took account of times where Plaintiff told her medical providers she felt "pain everywhere." *See, e.g.,* AT 1552 (citing, e.g., AT 1097). However, the ALJ also noted times during this same period when she reported to her health care providers that her shoulder pain was generally improving or nonexistent. *See* AT 1551-54 (citing, e.g., AT 909 (November 2016 report of improved pain and being "off pain medications for the last month"), AT 1310 (July 2017 report of pain being well controlled after cortisone shot), AT 1875 (August 2019 report of knee pain after a fall but "otherwise has no further complaint")). Courts have found clear and convincing reasons for discounting a plaintiff's pain testimony where the plaintiff reported controlled symptoms or lessening pain. *Fair*, 885 F.2d at 604 n.5 (explaining that the ALJ may employ ordinary techniques of credibility evaluation and may take into account prior inconsistent statements); *see also Petersen v. Berryhill*, 737 F. App'x 329, 331 (9th Cir. 2018) (finding the ALJ properly discounted pain testimony by noting inconsistencies between the plaintiff's reports to medical providers and those providers' observations, and reports by the plaintiff that pain was improving with medication and treatment).

The ALJ also cited a number of Plaintiff's reports to her health care providers that she could perform light household chores during the relevant period, including tasks requiring use of her shoulder. AT 1105 and 1128 (December 2016 report stating an ability to reach for things in the refrigerator), AT 1097 (Dr. Ali's observation that Plaintiff appeared comfortable despite her statement that she had "pain everywhere"), AT 1337 (August 2017 report of engaging in laundry and light house cleaning, and PA James's discharge of Plaintiff from physical therapy). The ALJ was permitted to rely on these reports to discount Plaintiff's testimony of disabling pain. *See Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999) (finding ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was

a specific finding sufficient to discredit the claimant's credibility).

Thus, the Court finds the ALJ provided sufficiently specific reasons for discounting the more severe aspects of Plaintiff's symptom testimony regarding her shoulder impairment, such that the Court does not find Plaintiff's testimony was arbitrarily discredited. *See Brown-Hunter*, 806 F.3d at 483.

## V.  CONCLUSION

Having addressed all of the points of error raised by Plaintiff, the Court finds the ALJ's decision otherwise supported by substantial evidence in the record and free from legal error. *See Ford*, 950 F.3d at 1148 (noting that a district court may reverse only if the ALJ's decision "contains legal error or is not supported by substantial evidence").

## ORDER

Accordingly, the Court ORDERS:

1. Plaintiff's motion for summary judgment (ECF No. 15) is DENIED;
2. The Commissioner's cross-motion for summary judgment (ECF No. 17) is GRANTED;
3. The final decision of the Commissioner is AFFIRMED; and
4. The Clerk of the Court is directed to CLOSE this case.

Dated:  September 9, 2024

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

3, carr.816